JOHN P. DENISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12820. Promulgated October 25, 1948.

*Emmett E. Eagan, Esq.*, for the petitioner.
*Cecil H. Haas, Esq.*, for the respondent.

692

Hill, *Judge*: The sole question in this case is whether on the facts and under applicable rules of law there was during the taxable years

1942 and 1943 a valid partnership between petitioner and Mrs. Denison. The law is clear that it is possible for a husband to form a partnership with his wife which will be recognized for tax purposes. *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293. Therefore it is a question of fact whether Denison and Mrs. Denison intended to operate J. P. Denison Co. as a bona fide partnership or whether Mrs. Denison was a partner in form only. We must determine their intent by examining all the circumstances surrounding the partnership agreement of August 3, 1940, the terms of this agreement, and the conduct of the Denisons subsequent to its execution.

It is clear that in August 1940 Mrs. Denison succeeded in persuading her husband to give up his position with Universal Cooler Corporation and to undertake the business of selling machinery and tools as a manufacturers' agent. J. P. Denison Co. was established for that purpose in September. It is also apparent that Denison and Mrs. Denison contemplated going into the new enterprise together, but there is no sound basis in the evidence for judging the intended status of petitioner's wife in this venture until 1941, when the company first actually engaged in representing manufacturers' supply companies. We recognize that upon advice of friends petitioner and Mrs. Denison did execute an agreement on August 3, 1940, which provided for the creation of J. P. Denison Co. as a full-fledged partnership between them. Yet there is nothing to indicate that at that time petitioner actually intended to carry on the business of manufacturers' agent under the terms of this agreement. Petitioner's testimony that he considered the agreement to be a license necessary for going into business with his wife implies that he considered the instrument to be a mere formality. Such a conclusion is fortified by the fact that the activities spelled out in the agreement do not even mention the possibility of operating as a manufacturers' agent.

The manner in which the affairs of J. P. Denison Co. were conducted in 1941 makes plain petitioner's intent to run it as a sole proprietorship rather than in partnership with his wife. Every formal manifestation of the firm's existence during that year points to the fact that Denison was operating the business in complete disregard of the partnership agreement. On the assumed name certificates for both J. P. Denison Co. and Bangor Products Co. petitioner stated that he was the sole owner and operator of the business. When a bank account was opened in the name of the firm, petitioner made a similar statement on the signature card. While the bank was authorized to honor checks upon his wife's signature, there is no proof that she ever exercised the privilege. Nor is there any evidence that business concerns dealing with the firm were ever apprised of its partnership status. The com-

pany books for 1941 also reflect a sole proprietorship. The full balance in the profit and loss account for the year was transferred to the personal account of petitioner. No drawing account or capital account for Mrs. Denison was entered in the company records. That petitioner did not understand the intricacies of accounting does not detract from the significance of this evidence, for his testimony reveals a familiarity with the company books which negatives ignorance of their content. Certainly if the firm's bookkeeper had been informed of a partnership status she would have reflected it in her entries. Finally, in tax matters, J. P. Denison Co. was treated as a sole proprietorship in 1941. No partnership return was filed for it that year. Petitioner does not successfully explain this failure by testifying he was completely ignorant of such returns. Had he intended to operate the company on a partnership basis Denison, as an experienced businessman, would certainly have inquired into the tax consequences. Petitioner on his tax return included all the firm's net income for that year. Surely the accountant who prepared this return was not informed that J. P. Denison Co. constituted a partnership. Mrs. Denison filed no return whatsoever for 1941. All these facts together conclusively show that at the end of 1941 no working partnership existed between petitioner and his wife.

Petitioner reaches an opposite conclusion on the basis that Mrs. Denison contributed such capital and services to the firm in 1941 that she qualified as a partner according to the familiar tests laid down in *Commissioner* v. *Tower, supra.* We found as a fact that capital was a material income-producing factor after September 1941, but that she made no contribution of capital originating with her to J. P. Denison Co. While the balance in the joint bank account of petitioner and his wife was transferred to an account opened for J. P. Denison Co. in March 1941, yet the evidence fails to reveal what, if any, portion of this capital originated with Mrs. Denison. In all events, the firm received these funds at a time when personal services rather than capital were the income-producing factor. Petitioner contends that the proceeds from the sale of Mrs. Denison's stocks in the fall of 1941 constituted a capital investment on her part. No written instrument accompanied the transfer of her stock certificates to petitioner from which the intent of the parties may be judged. The manner in which the proceeds were treated by the parties furnishes a surer guide to the Denisons' intent than their self-serving testimony that she was making a capital contribution. Mrs. Denison simply endorsed the certificates over to her husband, who actually sold them and deposited the proceeds in the firm's bank account. On the company journal all the stock is credited to him. He took the deduction for the capital loss arising from their sale. These facts are only consistent with ownership of the securities by Denison and a capital contribution on his part.

While under the authority of the *Tower* case Mrs. Denison's valuable services in 1940 and 1941 suggest a partner's status, yet they are not decisive, but only one consideration, in the ultimate determination of whether there was a genuine, bona fide partnership. *Wilson* v. *Commissioner*, 161 Fed. (2d) 661. Their force is more than offset by the many facts we have considered pointing in the opposite direction. When her work is viewed in the light of widespread manifestation of petitioner's intent to conduct J. P. Denison Co.'s affairs as a sole proprietorship, we conclude that Mrs. Denison's services constituted not the contribution of a partner, but loyal assistance rendered by a wife to help her husband get started in his business.

The evidence reveals no change in petitioner's treatment of the firm as a sole proprietorship until early in 1943, when the company bookkeeping records for the previous year were closed out and tax returns for 1942 were filed. Then for the first time an attempt was made by petitioner to give J. P. Denison Co. the veneer of a partnership. An entry on the company journal dated December 31, 1942, effective as of January 1, 1942, transferred half of the firm's capital to Mrs. Denison. A partnership return was filed in the name of J. P. Denison Co. for the first time and the net income was reported as distributable half to petitioner and half to his wife. It is noteworthy that, in his belated effort to give formal recognition to his wife as a partner, petitioner still ignored the partnership agreement of August 1940, for the partnership return for 1942 states that the partnership commenced January 1, 1942, and the same declaration was made in the return for the following year. This constitutes a frank admission by the petitioner that prior to 1942 the company was a sole proprietorship. Mrs. Denison filed a tax return for the first time in 1942 and, like her husband, reported half of the company's net income distributable to her. J. P. Denison Co.'s books and the tax returns filed in 1943 reflected the new role of partner assigned to Mrs. Denison.

Despite these formal evidences of a partnership displayed in 1943, petitioner in substance and reality continued to conduct the activities of the firm as a sole proprietor. He entered into no partnership agreement with his wife on January 1, 1942, or thereafter. The large gross profits realized in 1942 and 1943 were due solely to petitioner's management, services, and prior contribution of capital. He retained absolute command over the use of the firm's assets and income. Mrs. Denison failed to fulfill any of the tests announced in *Commissioner* v. *Tower*, *supra*, as criteria of a partnership status in the wife. There is no contention that she invested funds in J. P. Denison Co. during 1942 or 1943 or that she exerted the slightest influence in the management of its affairs. Petitioner concedes that the transfer of half of the firm's capital to her account on December 31, 1942, was ineffective as

a contribution of capital originating with her. We find no validity in the argument that she performed vital additional services during these years. The fact is that she came to the office only a few times a week to help out when regular employees were sick or on vacation. On her 1942 return Mrs. Denison listed her occupation as "House wife," showing that she considered her work for the company to be of secondary importance. Under the circumstances it is clear that the services of petitioner's wife were insignificant as an income-producing factor. *Abe Schreiber*, 6 T. C. 707; affd., 160 Fed. (2d) 108; *Leonard W. Greenberg*, 5 T. C. 732; affd., 158 Fed. (2d) 800; *William G. Harvey*, 6 T. C. 653. We conclude that there was no basis in substance for the formal partnership status assigned Mrs. Denison.

We can find no true business purpose to account for the partnership robes in which J. P. Denison Co. was suddenly cloaked in 1943. Every phase of the firm's operation continued thereafter, as before, to bear the imprint of a sole proprietorship in Denison. An adequate motive for the formal recognition finally given Mrs. Denison as a partner can be found in petitioner's desire to reduce his own taxes. The sharp rise in the gross receipts and net income of J. P. Denison Co. between 1941 and 1942 and the prospects of even higher earnings in 1943, due to heavier wartime demands, furnish the key to petitioner's purpose in changing the status of J. P. Denison Co. In such a situation, where the sole owner of an established business resorts to a family partnership in order to avoid the surtax on high profits, and it is plain the wife is a mere figurehead, the courts have not hesitated to hold the partnership ineffective for tax purposes. *Commissioner* v. *Tower*, *supra; Miller* v. *Commissioner*, 150 Fed. (2d) 823; *Paul G. Greene*, 7 T. C. 142. The mere fact that partnership form was observed in 1943, when unaccompanied by any corroboration in the actual conduct of J. P. Denison Co., does not persuade us of the parties' intent to carry on business as partners.

We conclude that the Commissioner was correct in his determination that for Federal tax purposes J. P. Denison Co. did not constitute a valid partnership between petitioner and his wife during 1942 and 1943.

*Decision will be entered under Rule 50.*